**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 21-1591-LPS |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| HYPHAMETRICS, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF THE NIELSEN COMPANY (US), LLC'S OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:

Steven Yovits
Constantine Koutsoubas
Mark Scott
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Clifford Katz
Malavika Rao
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

Dated: February 11, 2022
10021522 / 52358

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Carson R. Bartlett (#6750)
Colin E. Emrich (#6793)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
cbartlett@potteranderson.com
cemrich@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company*
*(US), LLC*

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ........................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................... 1

APPLICABLE LAW ............................................................................................................ 2

STATEMENT OF FACTS AND BACKGROUND ...................................................................... 4

ARGUMENT ..................................................................................................................... 4

    I.      The Asserted Claim of the '994 Patent Is Not Directed to an Abstract Idea ......... 4

        A.      The asserted claim of the '994 Patent is directed to an improvement in audience measurement meter technology, accomplished via specific technological solutions to prior art problems ................................................................................................. 4

        B.      Even assuming *arguendo* that the asserted claim were directed to some abstract idea, it would not be directed to the one HyphaMetrics posits ................................................................................. 10

        C.      The asserted claim recites a method that cannot be performed manually .................................................................................................. 12

        D.      Analogous case law shows the asserted claim passes *Alice* Step One ......................................................................................................... 13

        E.      HyphaMetrics' inapposite cases ............................................................. 15

    II.     The Asserted Claim of the '994 Patent Recites an Inventive Concept ................ 18

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3G Licensing, S.A. v. HTC Corp.*,
   C.A. No. 17-83-LPS, 2019 WL 2904670 (D. Del. July 5, 2019) ................................. 3, 10-11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).............................................................................................................3

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016).....................................................................................18, 20

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018).......................................................................................3, 18

*CardioNet, LLC v. InfoBionic, Inc.*,
   2021 WL 5024388 (Fed. Cir. Oct. 29, 2021) .......................................................................17

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
   935 F.3d 1341 (Fed. Cir. 2019). (Brief .)..............................................................................17

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019)...................................................................................... 9, 15-16

*Consumer 2.0, Inc. v. Tenant Turner, Inc.*,
   343 F. Supp. 3d 581 (E.D. Va. 2018) ...................................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)...........................................................................................5

*Dropbox Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2019, Jun. 19, 2020)...............................................................17

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)......................................................................................2, 11

*Groove Dig., Inc. v. Jam City, Inc.*,
   C.A. No. 18-1331-RGA, 2019 WL 351254 (D. Del. Jan. 29, 2019) ........................................3

*In the Matter of Certain Movable Barrier Operator Sys. and Components Thereof
   Final Initial Determ. ("Movable Barrier")*,
   USITC Inv. No. 337-TA-1209, 2021 WL 4843816
   (U.S. Intern. Trade Com'n Sept. 14, 2021).....................................................................12, 18

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)................................................................ 2-3, 7, 11

*Olympus Corp. v. Maxell, Ltd.*,
    C.A. No. 18-216-MN, 2018 WL 5962471 (D. Del. Nov. 14, 2018)............................... *passim*

*Sapphire Crossing LLC v. Quotient Tech., Inc.*,
    C.A. No. 18-1717-MN-CJB, 2020 WL 1550786 (D. Del. Apr. 1, 2020) ..........................4, 20

*Smart Meter Techs., Inc. v. Duke Energy Corp.*,
    C.A. No. 16-208-SLR, 2017 WL 2954916 (D. Del. July 11, 2017)........................................15

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019)................................................................................3, 5, 7

*Two-Way Media Ltd. v. Comcast Cable Commc'n, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)................................................................................17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)................................................................................................4

## NATURE AND STAGE OF PROCEEDINGS

On November 10, 2021, Plaintiff The Nielsen Company (US), LLC ("Nielsen") filed its Complaint, alleging that HyphaMetrics, Inc. ("HyphaMetrics") infringes Claim 7 of U.S. Patent No. 8,924,994 ("the '994 Patent," attached to the Complaint as Exhibit A). HyphaMetrics filed its Motion to Dismiss (D.I. 10) ("Motion") and its supporting brief (D.I. 11) ("Brief") on January 7, 2022. Nielsen respectfully submits this opposition.

## SUMMARY OF ARGUMENT

The Court should deny HyphaMetrics' Motion because the asserted claim of the '994 Patent is not directed to an abstract idea under *Alice* Step One. Rather, it recites an improvement in the technology of audience measurement meters – *i.e.*, meters that count and identify audiences watching particular programs on media presentation devices (such as televisions[1]).

In the prior art, audience measurement meters wasted energy because they remained active even during long periods when the televisions they monitored were inactive (*e.g.*, overnight). ('994 Patent, Compl. (D.I. 1) Ex. A, 2:64-3:2.) Moreover, any time a meter lost power or communication capability – no matter how briefly and regardless of whether or not the associated television was active at the time – its data had to be discarded for the entire monitoring period (often a whole day). (*Id.*, 3:19-33.) In other words, the audience measurement meter could not report accurate data on days when it experienced even a momentary power or communication outage. (*Id.*)

The invention recited in the asserted claim of the '994 Patent improves the technology of audience measurement meters by overcoming these prior art problems. To accomplish this, the

---

[1] Below, the terms "media presentation device" and "television" are used interchangeably because a television is a common form of media presentation device. However, both terms should also be understood to encompass other devices that present media content.

claim recites a specific series of technological steps.  For example, the asserted claim recites controlling whether the meter is on or off (*i.e.*, its "activation state") according to the activation state of the television it monitors, as determined by comparing the television's power consumption to two different thresholds.  (*Id.*, Claim 7.)  As explained in detail below, these steps constitute a specific technological advance and <u>not</u> an abstract idea.[2]

HyphaMetrics' entire brief rests on a mistake that the Federal Circuit has repeatedly admonished patent challengers not to make:  overgeneralizing the asserted claim and ignoring the specific technological elements it recites.  *See, e.g.*, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).  More specifically, instead of addressing the asserted claim's actual limitations (*e.g.*, determining the activation state of the television by comparing measured power consumption to two different thresholds), HyphaMetrics mistakenly asserts that the claim is directed to nothing more than "collecting viewership data only when a media presentation device (i.e., television) is on[.]"  (Brief at 2.)

## APPLICABLE LAW

The Federal Circuit has cautioned courts performing the *Alice* Step One analysis to resist the temptation to characterize a claim so generally that it ignores the claim's specific limitations. *McRO, Inc.*, 837 F.3d at 1313; *Enfish, LLC*, 822 F.3d at 1337.

At the motion-to-dismiss stage of the case, to successfully challenge a patent's eligibility under *Alice* Step One, a defendant must propose an abstract idea that accurately characterizes the

---

[2] Even assuming *arguendo* that the asserted claim of the '994 Patent were somehow found to be directed to an abstract idea, the claim would still be patent-eligible under *Alice* Step Two because it recites inventive concepts.  This is demonstrated by the Declaration of Nielsen's expert witness, Virginia Lee ("Lee Decl.," attached to the Complaint as Exhibit B), which sets forth facts establishing that the asserted claim recites elements that were not well-known, routine, or conventional at the time of the invention.

challenged claims.  Indeed, the role of a court in an *Alice* analysis is not to decide whether the challenged claims are directed to any abstract idea; rather, it is to decide whether the challenged claims are directed to the particular abstract idea proposed by the challenger.  *3G Licensing, S.A. v. HTC Corp.*, C.A. No. 17-83-LPS, 2019 WL 2904670, at *2 (D. Del. July 5, 2019) ("While it may be possible that [the asserted claim] could be accurately characterized as directed to some abstract idea, all I need to decide today is that the claim is not directed to the abstract idea articulated by defendant."); *Groove Dig., Inc. v. Jam City, Inc.*, C.A. No. 18-1331-RGA, 2019 WL 351254, at *3 (D. Del. Jan. 29, 2019) (denying motion to dismiss under § 101 because the abstract idea posited by the defendant "d[id] not satisfactorily capture the substance of the claims.").

Claims that do not merely claim a desired result, but instead provide a particular solution to a prior art technological problem, are not directed to an abstract idea.  *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1302-03 (Fed. Cir. 2019); *McRO, Inc.*, 837 F.3d at 1314.

Both this District and the Federal Circuit have recognized that a claim directed to an improvement in device technology is not directed to an abstract idea.  *See Olympus Corp. v. Maxell, Ltd.*, C.A. No. 18-216-MN, 2018 WL 5962471, at *4 (D. Del. Nov. 14, 2018) (citing *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1127 (Fed. Cir. 2018)).

Even if a claim is directed towards an abstract idea, it is still patent-eligible if it recites an element or a combination of elements that was not well-understood, routine, or conventional at the time of the invention.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69 (Fed. Cir. 2018).  If the specification of an asserted patent or an expert witness declaration attached to the complaint contains statements indicating the asserted claim passes muster under *Alice* Step Two, courts accept those statements

as true for the purposes of a Rule 12(b)(6) motion to dismiss (and deny the motion).  *See*

*Sapphire Crossing LLC v. Quotient Tech., Inc.*, C.A. No. 18-1717-MN-CJB, 2020 WL 1550786,

at *3-4 (D. Del. Apr. 1, 2020).

## STATEMENT OF FACTS AND BACKGROUND

The '994 Patent, entitled "Power Management for Audience Measurement Meters," is

directed to an improvement in the technology of audience measurement meters.  (*See* '994 Patent,

3:2-9, 33-49.)  Claim 7, the only claim asserted against HyphaMetrics, recites as follows:

7. A method comprising:

measuring, using a processor, power consumption of a media presentation device;

determining, using the processor, that an activation state of the media presentation device is an active state when the measured power consumption is greater than a first threshold;

determining, using the processor, that the activation state is an inactive state when the measured power consumption is less than a second threshold different from the first threshold; and

controlling, using the processor, activation of an audience measurement meter based on the monitored activation state of the media presentation device, the audience measurement meter to monitor the media presentation device when the activation state is the active state.

Accordingly, Claim 7 provides for an audience measurement meter that is activated only

when the power consumption of a media presentation device that it monitors indicates that the media

presentation device is on.  As explained below, this solves prior art problems with energy efficiency

and data accuracy.

## ARGUMENT

### I.     The Asserted Claim of the '994 Patent Is Not Directed to an Abstract Idea

#### A.     The asserted claim of the '994 Patent is directed to an improvement in audience measurement meter technology, accomplished via specific technological solutions to prior art problems

The asserted claim of the '994 Patent (Claim 7) is directed to an improvement in audience

measurement meter technology, and this improvement is achieved through the recitation of specific

4

technological solutions to prior art problems.  Thus, the Court should find that it is not directed to an abstract idea.[3]  *See Olympus*, 2018 WL 5962471, at *4 ("[T]he relevant inquiry at step one of *Alice* is whether the claims are directed to an improvement in computing devices or other technology. . . ."); *see also SRI Int'l Inc.*, 930 F.3d at 1303 ("[T]he claims are directed to a technological solution to a technological problem.").

### (1)  The prior art problems

The asserted claim's improvement in audience measurement meter technology solves major problems experienced in the prior art.  **First**, in the prior art, audience measurement meters wasted power because they operated continuously, even when the televisions they monitored were inactive (*i.e.*, switched off) for extended periods of time.  ('994 Patent, 1:12-20, 2:64-3:2.)  **And second**, in many prior art systems, the audience measurement meter's data was faulted (*i.e.*, discarded) for an entire monitoring period (often a full day) if the meter experienced even a momentary loss of power or communication.  (*Id.*, 3:19-33.)  This happened out of concern that an observed time gap in the data provided by the meter (as would occur any time the meter lost power or communication) was indicative of a time period when the meter should have captured data but did not – *i.e.*, that people were watching content on the television but the meter was not detecting the program or identifying

---

[3] HyphaMetrics improperly asks the Court to decide the eligibility of <u>all</u> claims of the '994 Patent as a matter of law, even though only Claim 7 is asserted.  (Compl. at ¶¶ 41–46.)  But the Court does not have the authority to rule on non-asserted claims, as they are not subject to a "case or controversy."  *Consumer 2.0, Inc. v. Tenant Turner, Inc.*, 343 F. Supp. 3d 581, 586 n.1 (E.D. Va. 2018) ("The Court limits the scope of this ruling to the claims asserted and set forth in Plaintiff's Complaint.  The Court does not have jurisdiction to rule on unasserted claims.") (citing *Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1308 (Fed. Cir. 2012) (finding "no case or controversy with respect to the unasserted claims.")).  In asking the Court to rule on all the claims, HyphaMetrics relies on a misreading of *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  There, the Federal Circuit found all the claims of the patents-in-suit patent-ineligible (based on a representative claim) because, unlike the instant case, <u>all</u> claims of the patents-in-suit were asserted in the case.  (*See* Complaint in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, No. 12-cv-2501, 2013 WL 3964909 (D.N.J. July 31, 2013), attached hereto as Exhibit 1, ¶¶ 18, 23, 28, 33.)

the people.  (*Id.*)  But many times, faulting the data was unnecessary, as the meter's data gap often happened when the television was off (*i.e.*, when the television could not have been presenting content in any event).  (*Id.*, 3:33-49.)

The solution to these problems (which, as explained below, is provided by the asserted claim of the '994 Patent) is to accurately determine whether the television is on or off and turn the audience measurement meter on or off accordingly.[4]  (*Id.*, 3:2-49.)  Unfortunately, the prior art provided no satisfactory approach for doing so, as the available approaches created a different set of problems (which are also solved by the claimed invention).  In particular, it was possible in the prior art to monitor the power consumption of a television, but because of its fluctuations over time, comparing that power consumption against a particular single threshold did not work to determine whether the television was on or off.[5]  (*See* Lee Decl., ¶ 11.)  It was also possible in the prior art to determine the activation state of a television by monitoring the audio output of the television.  (*Id.*, ¶ 10.)  But this approach was prone to errors because of the wide fluctuation in audio output within television programs and because of echoing sound and sound spillover from adjacent rooms.  (*Id.*, ¶ 12.)

### (2)   The technological advance in audience measurement meter technology that solves the prior art problems

The asserted claim's advance in meter technology, which overcomes the above-described problems with the prior art, is that it provides an audience measurement meter that turns on and off at

---

[4] In this way, power is not wasted attempting to monitor an inactive television.  (*Id.*, 2:64-3:9.)  Moreover, accurately tracking when the meter is controlled to the "off" state (indicating that the television is also off) eliminates the needless discarding of an entire day's data.  (*Id.*, 3:33-49.)

[5] Specifically, a given media presentation device has an average power consumption, but the actual power consumption fluctuates over time, both above and below the average.  (Lee Decl., ¶ 11.)  Thus, using the average power consumption as the threshold leads to misinterpretation of the fluctuations in power consumption as corresponding changes in the activation state of the television (thereby rendering the audience measurement meter ineffective).  (*Id.*)

precisely the right times, according to the activation state of the television as determined by <u>a specific</u> <u>technological method</u>.  In particular, the claim recites the determination of the activation state of the media presentation device by monitoring the power consumption of the media presentation device using **two thresholds** and controlling the audience measurement meter accordingly.  ('994 Patent, Claim 7; Lee Decl., ¶¶ 8-9.)  In other words, the asserted claim recites determining that the media presentation device is active (and activating the audience measurement meter) when the measured power consumption is **greater than a first threshold**, and determining that the device is inactive (and deactivating the audience measurement meter) when the measured power consumption is **less than a second (different) threshold**.[6]  (*See* '994 Patent, Claim 7.)  This method, which specifies precisely how the state of the television is to be determined and how the audience measurement meter is to be controlled based on that state, is a narrow, specific, and technological method – <u>not</u> an abstract idea.  *See SRI Int'l Inc.*, 930 F.3d at 1303.

As explained below, the above-described method overcomes:  (a) the problems associated with prior art approaches to determining the activation state of the television (*i.e.*, that fluctuating power consumption prevented the effective use of power consumption measurement, and that audio output measurement was error-prone); and (b) the problems associated with the fact that prior art audience measurement meters never turned off (*i.e.*, energy waste and inaccuracy).

### (3)  How the claimed advance solves prior art technological problems associated with determining the television's activation state

The steps recited in the asserted claim of the '994 Patent solve the problems associated with prior art approaches to determining the television's activation state.  **First**, in contrast to the

---

[6] Notably, the asserted claim does <u>not</u> recite a desired result.  Instead, it recites the steps ("measuring," "determining," and "controlling") to be performed.  (*See* '994 Patent, Claim 7.) The desired result (a more energy-efficient and accurate audience measurement meter) is set forth in the specification (where it should be).  (*See* '994 Patent, 3:8-9, 3:42-49.)  *See also McRO, Inc.*, 837 F.3d at 1314.

prior art method of measuring power consumption against a single threshold, the asserted claim's use of two thresholds accurately determines whether the television is on (if the power is above a threshold) or off (if the power is below a different threshold). (Lee Decl., ¶ 11.) In this way, small variations in power usage will not result in perceived changes in activation state.[7]  (*Id.*)

**And second**, in contrast to the prior art method of monitoring the television's audio output, the asserted claim's measurement of power consumption does not experience the problems associated with varying levels of sound in media content, echoing sound, and sound spillover from adjacent rooms. (*See id.*, ¶ 12.)

### (4) How the claimed advance solves prior art technological problems associated with the fact that audience measurement meters operated continuously

Having solved the prior art problems with determining the activation state of the television, the asserted claim also solves the higher-level prior art problems of wasted energy and needless data faulting.[8]  Specifically, by automatically turning on only when the television is on, the audience measurement meter is improved because it no longer consumes power needlessly

---

[7] If the power consumption is between the thresholds, no new determination will be made, and the television's state will be understood not to change from the last determined state. (Lee Decl., ¶ 11.)

[8] In its own patent (filed nine years after the application for the '994 Patent), HyphaMetrics acknowledges that solutions to problems such as these constitute improvements in audience measurement meters. (*See* U.S. Patent No. 10,932,002 (attached to the Complaint as Exhibit E), 14:25-29 ("[T]he power module **150** is further configured to automatically turn on (full power) when the television **200** is turned on, and automatically turn off (reduced power) when the television is turned off."), 47:36-42 ("By limiting content identification to times when the television is actually turned on, content consumption is more accurately determined. Furthermore, limiting content identification times further optimizes the use of computing resources . . . and saves data consumption . . . ."), 50:63-51:13 ("Conventional . . . use of ACR microphones to detect TV ON/OFF is unreliable as the microphones tend to pick up signals from other sources which skews the output data . . . . In contrast to conventional ACR, the configuration of the gateway **110** allows it to definitively identify TV ON/OFF without reliance on a microphone or any peripheral device. . . .  As described above, in various embodiments, an AC Loop circuit detects the power consumed by the television connected to the gateway.").)

during periods when the television is off.  ('994 Patent, 2:64-3:9.)  Moreover, the recited steps ensure that the audience measurement meter's data will not have to be discarded when the meter experiences a power or communication outage while the television is off (*i.e.*, when there is nothing for the meter to monitor, and there is no concern that the meter is missing substantive data).  (*Id.*, 3:33-49.)

### (5) HyphaMetrics' improper citation of the '994 specification

HyphaMetrics inaccurately characterizes citations to the '994 specification in its argument that the asserted claim is directed to an abstract and non-specific approach.[9]  For instance, HyphaMetrics points to the '994 specification's statement that it is possible to implement the invention using "any appropriate technique to monitor the monitored power." (Brief at 11 (quoting '994 Patent, 8:12-17).)  It is true that any known technique for power consumption measurement can be used in carrying out a step of the asserted claim.  But this does not mean that the claim lacks technological specificity.  To the contrary, the asserted claim contains specific technological limitations regarding how power consumption measurements are to be used (*i.e.*, comparing them to two different thresholds and controlling the audience measurement meter accordingly).

In another example, HyphaMetrics uses an unfairly truncated '994 Patent citation to argue that the asserted claim is not specific enough.  Specifically, HyphaMetrics improperly argues that the asserted claim purports to "cover[] all methods, apparatus and articles of manufacturing" that achieve power management.  (Brief at 2 (quoting '994 Patent, 21:25-28).) But this is at best misleading, as the complete sentence is merely a tautological statement that

---

[9] In so doing, HyphaMetrics improperly attempts to override the plain language of the claims.  *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) ("[R]eliance on the specification must always yield to the claim language . . . .").

"this patent covers all methods, apparatus and articles of manufacture <u>fairly falling within the scope of the appended claims</u>." ('994 Patent, 21:25-28 (emphasis added).)  Clearly, this does not imply that the asserted claim purports to cover all modes of power management.[10]

And in yet a third example, HyphaMetrics references the specification's statement that the invention of the patent "enable[s] an audience measurement meter to be activated (*e.g.*, woken up) and deactivated (*e.g.*, placed in sleep state) corresponding to a detected activation state of a media presentation device being monitored by the audience measurement meter, thereby improving the efficiency of the audience measurement meter." ('994 Patent, 3:2-9 referenced by Brief at 14.)  Although this is plainly a statement about the <u>result</u> achieved when following the steps of the asserted claim (which is properly included in the patent's specification), HyphaMetrics improperly uses the quotation to characterize the claim itself, thereby giving the untrue impression that Nielsen is claiming the result.

**B.    Even assuming *arguendo* that the asserted claim were directed to some abstract idea, it would not be directed to the one HyphaMetrics posits**

As explained above, the asserted claim of the '994 Patent is not directed to an abstract idea, and the Court should deny HyphaMetrics' Motion on that basis.  But even if the claim were directed to <u>some</u> abstract idea, an independent basis for the Court to deny the present Motion is HyphaMetrics' failure to posit a particular proposed abstract idea <u>that accurately reflects the scope of the asserted claims</u>.  *See 3G Licensing, S.A.*, 2019 WL 2904670, at *2 ("While it may be possible that [the asserted claim] could be accurately characterized as directed to some abstract

---

[10] Equally misleading is HyphaMetrics' citation of the specification at 2:12-14 (stating that "[p]ower management methods, apparatus and articles of manufacture for audience measurement meters are disclosed herein") for the proposition that the asserted claim purports to cover all power management methods.  (Brief at 2-3.)

idea, all I need to decide today is that the claim is not directed to the abstract idea articulated by defendant.").

HyphaMetrics argues that the asserted claim is directed to the abstract idea of "collecting viewership data only when a media presentation device (like a television) is turned on." (Brief at 8.) But this "abstract idea" is an example of what the Federal Circuit has repeatedly said <u>not</u> to do: "oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc.*, 837 F.3d at 1313 (citations and quotations omitted); *see also Enfish, LLC*, 822 F.3d at 1377 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."). In particular, the posited abstract idea ignores the fact that the asserted claim contains limitations requiring (1) determining that the media presentation device is active when power consumption is greater than a first threshold; (2) determining that the media presentation device is inactive when power consumption is less than a second threshold different from the first threshold; and (3) controlling activation of an audience measurement meter based on the activation state of the media presentation device. (*See* '994 Patent, Claim 7.)

Because HyphaMetrics has ignored the specific limitations of the claims, its posited "abstract idea" improperly covers many activities that are not covered by the claims. For example, HyphaMetrics' posited abstract idea covers the above-described prior art method of controlling the audience measurement meter based on the activation state of media presentation device as determined through the audio output monitoring approach (whereas the claimed invention uses a different approach that improves upon this prior art method). Thus, the Court should find that HyphaMetrics has not properly stated an abstract idea and deny the present Motion. *See 3G Licensing, S.A.*, 2019 WL 2904670, at *2.

## C.       The asserted claim recites a method that cannot be performed manually

Contrary to HyphaMetrics' repeated assertion, the asserted claim of the '994 Patent does not recite a mental process or a manual one.  Measuring power consumption to determine the activation state of a television is not a mental process of a human being. [11]  Nor is "enabling unattended operation in an energy-efficient fashion" something that can be accomplished by a human being.  *In the Matter of Certain Movable Barrier Operator Sys. and Components Thereof Final Initial Determ. ("Movable Barrier")*, USITC Inv. No. 337-TA-1209, 2021 WL 4843816, at *203 (U.S. Intern. Trade Com'n Sept. 14, 2021).

Quoting the specification's statement that "one or more of the machine readable instructions presented by the flowcharts of FIGS 6-11 may be implemented manually," HyphaMetrics inappropriately argues that the '994 Patent "admits the steps [of the asserted claim] could be performed 'manually.'"  (Brief at 13 (quoting '994 Patent, 16:14-16).)  But this quote does not "admit" that the method recited in the claim could be performed manually.  In fact, the functional blocks of Figures 6-11 are generalized conceptual examples that do not include the specific steps recited in the asserted claim (and as such, they do not characterize the claim).  Specifically, those figures do not reflect the claimed limitations of:  (1) measuring the power consumption of the media device; (2) determining that the media presentation device is active when power consumption is greater than a first threshold; and (3) determining that the media presentation device is inactive when power consumption is less than a second threshold different from the first threshold.  (*See* '994 Patent, Claim 7.)  Indeed, Figures 6 through 11 are

---

[11] In fact, in certain circumstances, a human being cannot even tell whether or not a television is on or off.  For example, when there is an extended "dead" period (as occasionally happens during a transition between programs or commercials), a human being cannot ascertain the status of the television without waiting until the next segment of content is presented.

silent as to the method of how to determine the active/inactive state of the media presentation device.

In addition, HyphaMetrics incorrectly alleges that "the patent admits that the key purported advance – *i.e.*, collecting viewership only when the television is on – can be 'implemented manually.'"  (Brief at 5 (quoting '994 Patent, 16:3-24).)  It is unclear why HyphaMetrics believes the '994 Patent describes "collecting viewership data only when the television is on" as the key advance of the invention.  To the contrary, Claim 7 recites the actual key advances – comparing the measured power consumption to two thresholds and controlling the meter accordingly.  As explained above, these cannot be implemented manually.[12]

### D.     Analogous case law shows the asserted claim passes *Alice* Step One

The asserted claim of the '994 Patent is analogous to the claim upheld as patent-eligible in this District's *Olympus Corp.* case, where the claim at issue recited as follows:

1. A portable information recording/play-back apparatus comprising:

   an imaging module which images video information;

   a first recording/play-back module which records the video information into a first recording medium, or plays-back the video information from the first recording medium;

   a second recording/play-back module which records the video information into a second recording medium, or plays-back the video information from the second recording medium;

   a battery; and

---

[12] HyphaMetrics asserts that the asserted claim of the '994 Patent simply "invites the reader to turn an audience measurement meter on or off."  (Brief at 13.)  Such an assertion is wrong because it ignores the specific limitations of the claim.  Far from "inviting the reader" to manually turn on and off the audience measurement meter, the asserted claim recites the control of the meter according to the on/off state of the television as determined by measuring power consumption using the two threshold approach.  ('994 Patent, Claim 7.)

a controller which controls at least the imaging module, the first and second recording/play-back module,

wherein the controller judges whether a mode, controlling the first recording/play-back module and the second recording/play-back module, is an imaging mode, controlling so that the first recording/play-back module or the second recording/play-back module records a video information imaged by the imaging module into the first recording medium or the second recording medium, or a dubbing mode which controls a dubbing operation, the first recording/play-back module plays back a video information from the first recording medium and the second recording/play-back module recording the video information which is play-backed from the first recording medium into the second recording medium;

when the controller judges that the mode is the imaging mode operating on the battery, the controller controls so that if recording into one recording medium is performed, recording into the other recording medium is stopped; and

when the controller judges that the mode is the dubbing mode and the first and second recording/play-back modules operate on the battery, if the battery remaining amount is larger than a threshold value, the controller controls so that the dubbing operation is permitted.

*Olympus Corp.*, 2018 WL 5962471, at *1-2.

This claim can be boiled down to the following elements:  a **battery**; an **imaging module**; first and second **recording/playback modules**; and a **controller** that turns on and off certain functions as follows:

- when it is determined that the apparatus is in imaging mode and operating on battery power, and if the device is recording into one recording medium, the controller turns off the function of recording into the other recording medium

- when it is determined that the apparatus is in dubbing mode and operating on battery power, the controller keeps active the function of dubbing if the remaining battery power is above a threshold.

*See id.*

The similarity between the *Olympus Corp.* claim and the asserted claim of the '994 Patent (for purposes of a § 101 analysis) is striking.  Specifically, both claims involve comparing a power level to a threshold and, based on the results of that comparison, controlling whether

14

certain device functions will be on or off.  Both claims also involve determining the state or mode of a device and employing a controller to act accordingly.

The *Olympus Corp.* court noted that, just like the specification of the '994 Patent, the specification of the patent-in-suit explained that the claim was directed to solving prior art problems with power consumption.  *Id.* at *5.  The court then pointed out that the claim "requires a controller that 'judges' the mode the claimed recording/play-back apparatus is operating in and 'controls' the apparatus accordingly."  *Id.*  This is just like the asserted claim of the '994 Patent, which judges the mode a television is operating in (on or off) and controls a meter accordingly. The *Olympus Corp.* court held, as this Court should hold in the present case, that the asserted claim was directed to a technology improvement, not an abstract idea.  *Id.* at *6.[13]

### E.    HyphaMetrics' inapposite cases

HyphaMetrics cites several inapposite cases in arguing that the asserted claims are directed to an abstract idea.  First, HyphaMetrics incorrectly argues that that the claims of the '994 Patent "are on all fours" with those found invalid in *ChargePoint*.  (Brief at 11-12.)  But to the contrary, the claims asserted in *ChargePoint* suffered a fatal flaw that distinguishes them from Claim 7 of the '994 Patent.  In particular, the *ChargePoint* claims attempted to cover the "abstract idea of communicating over a network for device interaction."  *ChargePoint*, 920 F.3d at 773.  Indeed, the claims contained "broad claim language [that] would cover <u>any</u> mechanism

---

[13] *See also Smart Meter Techs., Inc. v. Duke Energy Corp.*, C.A. No. 16-208-SLR, 2017 WL 2954916, at *2, 6 (D. Del. July 11, 2017), in which the court upheld the following claim as non-abstract:

> A method of measuring power consumption information on a power line comprising:
> measuring current fluctuations in the power line;
> calculating power consumption information from the current fluctuations in a processor;
> converting the power consumption information into IP-based power consumption information in the processor; and
> transmitting the IP-based power consumption information from the processor to a destination autonomously in IP format over an external power line network.

for implementing network communication on a charging station, thus preempting the entire industry's ability to use networked charging stations."  *Id*. at 770 (emphasis added).  In contrast, Claim 7 of the '994 Patent contains specific technological limitations (comparing the television's power consumption to two thresholds to determine the activation state of the television and controlling the audience measurement meter accordingly).  ('994 Patent, Claim 7.)  Perhaps an analogy to *ChargePoint* would have been warranted if the asserted patent claimed all methods of determining the activation state of a television and controlling an audience measurement meter.  But that is not the case.  As explained above, there are other ways to determine the activation state of the television and control an associated audience measurement meter, including the prior art audio output monitoring method.  (*See, e.g.*, Lee Decl., ¶ 10.)

Importantly, the Federal Circuit also found that *ChargePoint* specification did not even purport to overcome any prior art difficulty or explain how the improved technology would operate differently than the prior art.  *ChargePoint*, 920 F.3d at 768.  In contrast, the '994 specification describes how the invention solves prior art problems regarding wasted power and inaccuracy in audience measurement meters.  (*See, e.g.*, '994 Patent, 3:2-9 ("In contrast to such prior systems, [the methods] disclosed herein enable an audience measurement meter to be activated . . . and deactivated . . . corresponding to a detected activation state of a media presentation device being monitored by the audience measurement meter, thereby improving energy efficiency . . . ."); 3:42-49 ("Moreover, if the media presenting device is determined to have been inactive while the audience measurement meter experienced the power loss or other outage . . . faulting the audience measurement data obtained from the audience measurement meter is unnecessary.").)

HyphaMetrics also argues that the asserted claim of the '994 Patent is "no different" from the ones asserted in *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341 (Fed. Cir. 2019).  (Brief at 12.)  But like the claims at issue in *ChargePoint*, the *Chamberlain* claim has deficiencies not present in Claim 7 of the '994 Patent.  Specifically, the *Chamberlain* claim was "directed to wirelessly communicating status information about a system.  . . . The only described difference between the prior art movable barrier operator systems and the claimed movable barrier operator system is that the status information about the system is communicated wirelessly."  935 F.3d at 1346.  The problem for the *Chamberlain* claim was that "[t]he specification admits that the act of transmitting data wirelessly is 'well understood in the art,' and no other changes to the generically claimed movable barrier operator are recited in the asserted claims or described in the specification."  *Id.* at 1347 (citation omitted).  In contrast, the limitations recited in Claim 7 of the '994 Patent articulate specific improvements over the prior art that were not well-understood, routine, or conventional in the prior art.  (Lee Decl., ¶ 8.)[14]

Notably, in upholding claims similar to the asserted claims of the '994 Patent, the International Trade Commission ("ITC") distinguished *Chamberlain* as follows:

> [Defendant] oversimplifies the claims and does not take into account the low power consumption feature that the specification makes clear is a critical part of the claimed advance.  Additionally, the claims recite more than simply changing wired signals to wireless and thus *Chamberlain* is again inapposite. The asserted claims are an improved operator system with various features, including enabling unattended operation in an energy-efficient fashion.

---

[14] Nor is it appropriate to analogize Claim 7 of the '994 Patent to the claims at issue in the other cases HyphaMetrics cites.  For instance, unlike the claim at issue in *CardioNet, LLC v. InfoBionic, Inc.*, 2021 WL 5024388, at *4 (Fed. Cir. Oct. 29, 2021), Claim 7 is not "focuse[d] on using a general-purpose computer to carry out the abstract idea."  And unlike the claims at issue in *Two-Way Media Ltd. v. Comcast Cable Commc'n, LLC*, 874 F.3d 1329 (Fed. Cir. 2017) and *Dropbox Inc. v. Synchronoss Techs., Inc*., 815 F. App'x 529 (Fed. Cir. 2019, Jun. 19, 2020), Claim 7 does not merely require "functional results" without describing "how to achieve these results in a non-abstract way."  *Two-Way Media*, 874 F.3d at 1337; s*ee Dropbox*, 815 F. App'x at 532-33.

*Movable Barrier*, 2021 WL 4843816, at *203.  Like the claims at issue there, Claim 7 of the '994 Patent "enable[s] unattended operation in an energy-efficient fashion," which "the specification makes clear is a critical part of the claimed advance."  *Id.*  (*See also* '994 Patent, 3:2-9.)  Just as the ITC did with regard to the claims it considered, this Court should find that the asserted claim of the '994 Patent is not analogous to those at issue in *Chamberlain*.

## II.   The Asserted Claim of the '994 Patent Recites an Inventive Concept

Even assuming *arguendo* that the asserted claim of the '994 Patent is directed to the abstract idea that HyphaMetrics posits, it is still patent-eligible.  In particular, it contains inventive concepts under *Alice* Step Two because it recites a combination of elements that was not well-understood, routine, or conventional at the time of the invention.[15]  *See Berkheimer*, 881 F.3d at 1368-69.

The Declaration of Virginia Lee establishes that the asserted claim recites elements and combinations of elements that were not well-understood, routine, or conventional at the time of the invention.  Initially, Ms. Lee asserts that the claim's Two Threshold Element[16] and Activation Control Element[17] were not well-understood, routine, or conventional at the time of

---

[15] HyphaMetrics repeatedly complains that the asserted claim cannot recite an inventive concept because certain individual elements can be performed by conventional, off-the-shelf components.  (*See, e.g.*, Brief at 3.)  But that is not the test for patent-eligibility.  An inventive concept may be found in how the components are used and how they combine with other elements.  *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

[16] Ms. Lee defines the claim's Two Threshold Element as "[d]etermining that the media presentation device is in an active state (*i.e.*, it is 'on') when the measured power consumption is greater than a first threshold and determining that the media presentation device is in an inactive state (*i.e.*, it is 'off') when the measured power consumption is less than a second threshold different from the first threshold[.]"  (Lee Decl., ¶ 8.)

[17] Ms. Lee defines the claim's Activation Control Element as "controlling activation of an audience measurement meter based on a determination of the activation state of the media presentation device by using two thresholds with regard to power consumption, where the

invention.  (Lee Decl., ¶ 8.)  Then, Ms. Lee's declaration describes how these two elements

work.  Specifically, she explains that the Two Threshold Element uses a first power consumption

threshold to determine that the television is on, and a second power consumption threshold to

determine that the television is off.  (*Id.*, ¶ 9.)  She gives an example to illustrate how the element

works, noting that if the first threshold is 60 W and the second threshold is 10 W, then the Two

Threshold Element determines that the television is active (on) if its power consumption exceeds

60 W, and that the television is inactive (off) if its power consumption is less than 10 W.  (*Id.*)

Importantly, she explains, no new determination is made if the power consumption is between 10

W and 60 W, and the television will be understood to remain in its last-determined state.  (*Id.*)

With regard to the Activation Control Element, Ms. Lee explains that the element provides

control of the audience measurement device according to whether the television is on or off,

based on the use of two thresholds to measure power consumption.  (*Id.*, ¶ 13.)

Finally, Ms. Lee's declaration explains how the Two Threshold Element and the

Activation Control Element provide benefits over the prior art.  With regard to the two Threshold

Element, Ms. Lee explains that using a single threshold, as available in the prior art, was

susceptible to error due to fluctuations in the actual power consumption of televisions.  (*Id.*, ¶

11.)  This resulted in the erroneous determination that the on/off state of the television was

changing rapidly and frequently.  (*Id.*)  This problem is eliminated by using two thresholds,

which ensure that the detected state of the television changes only when the power consumption

variation is significant enough to evidence a true change in its on/off state.  (*Id.*)  Ms. Lee also

explains that the Two Threshold Element provides substantial benefits over the prior art method

---

audience measurement meter monitors the media presentation device when the activation state is
the active state[.]"  (Lee Decl., ¶ 8.)

of determining the on/off state of the television by monitoring its audio output level.  (*Id.*, ¶ 12.)
The audio monitoring approach, she states, was susceptible to errors due to widely varying sound
levels of media content, echoing sound, and audio spillover from adjacent rooms.  (*Id.*)  And
with regard to the Activation Control Element, Ms. Lee's declaration explains that by keeping
the audience measurement meter active only when the television is active, the element solves the
problems of the prior art.  (*Id.*, ¶ 14.)  Specifically, it allows the avoidance of wasting energy
through needless monitoring, and it allows the avoidance of unnecessarily faulting data due to
data gaps that occur when the television is inactive.  (*Id.*, ¶¶ 13-14.)

In light of Ms. Lee's declaration, the Court should find that the asserted claim contains an
inventive concept and deny HyphaMetrics' Motion.[18]  *See Sapphire Crossing LLC*, 2020 WL
1550786 at *3-4 (citing *Berkheimer*, 881 F.3d at 1368-69) (holding that an expert declaration
precluded the granting of a § 101 motion to dismiss because it:  (1) asserted that a limitation of
the claim was unconventional; (2) described how that limitation worked; and (3) explained how
the limitation provided benefits over the prior art.).[19]

## CONCLUSION

The Court should find that Claim 7 of the '994 Patent (the only asserted claim) is patent-
eligible under § 101.  The Court should decline to rule on any other claim of the patent.

---

[18] Importantly, the asserted claim of the '994 Patent does not preempt all ways of
automatically activating and deactivating an audience measurement meter, not does it even
preempt all ways of doing so according to a determination of whether the television is active or
inactive.  For instance, it does not preempt controlling the audience measurement meter
according to the audio output of the television.  (*See* '994 Patent, Claim 7; Lee Decl., ¶ 16.)
Claims that do not preempt an entire field should <u>not</u> be dismissed under *Alice* Step Two.  *See
BASCOM,* 827 F.3d at 1350.

[19] HyphaMetrics asserts that Ms. Lee's declaration contradicts "express statements in the
patent's intrinsic record."  (Brief at 19.)  To the contrary, however, the patent does not contradict
anything in the declaration.  HyphaMetrics' support for its assertion consists entirely of
misunderstood citations to the specification, as explained above.  (*See supra*, I.A.-I.C.)

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  /s/ Bindu A. Palapura
     David E. Moore (#3983)

Steven Yovits
Constantine Koutsoubas
Mark Scott
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel:  (312) 857-7070

     Bindu A. Palapura (#5370)
     Carson R. Bartlett (#6750)
     Colin E. Emrich (#6793)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel:  (302) 984-6000

Clifford Katz
Malavika Rao
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  (212) 808-7800

     dmoore@potteranderson.com
     bpalapura@potteranderson.com
     cbartlett@potteranderson.com
     cemrich@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Dated:  February 11, 2022
10021522 / 52358

21