# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE NIELSEN CO. (US), LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 21-1591-CJB ) |
| HYPHAMETRICS, INC., | ) ) |
| Defendant. | ) ) |

David E. Moore, Bindu A. Palapura, Carson R. Bartlett and Colin E. Emrich, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Steven Yovits, Constantine Koutsoubas and Mark Scott, KELLEY DRYE & WARREN LLP, Chicago, IL; Clifford Katz and Malavika Rao, KELLEY DRYE & WARREN LLP, New York, NY, Attorneys for Plaintiff.

Jack B. Blumenfeld and Jeremy A. Tigan, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Gregory Sobolski, LATHAM & WATKINS LLP, San Francisco, CA; Richard G. Frenkel, LATHAM & WATKINS LLP, Menlo Park, CA; Gabriel K. Bell and Diane E. Ghrist, LATHAM & WATKINS LLP, Washington, DC, Attorneys for Defendant.

**MEMORANDUM OPINION AND ORDER**

August 9, 2022
Wilmington, Delaware

*Christopher J. Burke*
**CHRISTOPHER J. BURKE, United States Magistrate Judge**

As announced at the hearing on July 8, 2022, IT IS HEREBY ORDERED that Defendant HyphaMetrics, Inc.'s ("Defendant" or "HyphaMetrics") motion to dismiss (the "motion"), (D.I. 10), which argues that Plaintiff's The Nielsen Co. (US), LLC's asserted United States Patent No. 8,924,994 is directed to non-patent-eligible subject matter pursuant to 35 U.S.C. § 101 ("Section 101") is DENIED.

Defendant's motion was fully briefed as of March 4, 2022, (D.I. 15), and the Court received further submissions regarding Section 101-related questions on July 1, 2022, (D.I. 40; D.I. 41). The Court carefully reviewed all submissions in connection with Defendant's motion, heard oral argument, and applied the relevant legal standards for review of this type of Section 101-related motion at the pleading stage, which it has previously set out in *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062-CJB, 2018 WL 3991474, at *2-5 (D. Del. Aug. 21, 2018).

The Court's Order is consistent with the bench ruling announced at the hearing on July 8, 2022,[1] pertinent excerpts of which follow:

> The next case is *[T]he Nielsen Co. (US), LLC[ vs.] HyphaMetrics, Inc.*, Civil Action Number 21-1591-CJB. In this case, which is a consent matter, before me is [D]efendant's Rule 12(b)(6) motion. The motion is denied for the reasons I will set out now.
>
> Plaintiff asserts in its complaint that [D]efendant infringes claim 7 of United States Patent Number 8,924,994, which I will refer to as the '994 patent, and which is entitled "Power Management for Audience Measurement Meters." Claim 7 recites a method comprising measuring the power consumption of a media presentation device (which the Court will refer to hereafter as a television), determining that the television is on when the measured power consumption is greater than a first threshold, determining that the television is off when the measured power consumption is less than a second threshold that[ is] different from the first threshold (and I[ will] refer to these latter two limitations

---

[1]   (*See* D.I. 42)

as the "two-threshold element"), and controlling activation of an audience measurement meter based on the monitored activation state of the television, such that the meter will not monitor the television when the television is off (I[ will] refer to this last element as the "activation control element").[2]

First, on the issue of representative claims, while Defendant's motion is directed to all of the claims in the '994 patent, Defendant argues that claim 7 is representative of all such claims. Plaintiff retorts that because only claim 7 is asserted, the Court does[ not] have the authority to decide the eligibility of all claims of the '994 patent. The Court need not definitively decide this issue. It need only analyze claim 7, and based on its denial of the motion with respect to Defendant's purported representative claim, the Court will therefore deny the motion with respect to all claims of the '994 patent.

I[ will] now turn to the *Alice* analysis at step one. Defendant says that claim 7 is directed to the abstract idea of "collecting viewership data only when a television is turned on[.]"[3] The Court agrees that that is an abstract idea. [A] claim to an abstract idea has been described by the United States Court of Appeals for the Federal Circuit as one directed to a "'disembodied' concept . . . a basic building block of human ingenuity, untethered from any real-world application[,]"[4] and Defendant's abstract idea fits that characterization. Indeed, Plaintiff does not dispute that "collecting viewership data only when a television is turned on" is an abstract idea.

The next question is whether claim 7 is actually directed to that concept [of] "collecting viewership data only when a television is turned on." Plaintiff argues that Defendant has overgeneralized claim 7. According to Plaintiff, the difference between claim 7, as compared to the abstract idea, is that while the abstract idea simply is collecting data while the television is on, claim 7 is directed to the collection of data when the television is on, *utilizing a particular way of determining whether the television is on*—that is, through the utilization of the two-threshold element.[5]

---

[2] (D.I. 1, ex. A (hereinafter, "'994 patent"), col. 22:29-44)

[3] (D.I. 11 at 8)

[4] *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (Lourie, J., concurring).

[5] (D.I. 13 at 6-7)

3

The step one question is not clear-cut here. The Federal Circuit has indicated that a patent's specification can be helpful in answering the question of what a claim is directed to. For example, if a claim contains elements that are described by the patent's specification as being the innovation over the prior art, or what the "present invention" is all about, then it stands to reason that the claim probably is directed to that element or concept.[6] That said, the Federal Circuit has noted that reliance on the specification in determining the true focus of a claim must always yield to the language of the claim in question.[7]

On the one hand, one could argue, as Defendant does, that the *'994 patent, as a whole*, is directed to the concept of collecting viewership data only when a television is turned on. The title of the patent helps Defendant a bit on this front, as the patent is broadly titled "Power Management for Audience Measurement Meters" (and does[ not] specifically reference the two-threshold element). Similarly, the Abstract of the patent explains that "[p]ower management methods, apparatus[] and articles of manufacture for audience measurement meters are disclosed[,]" such as a method that comprises "determining an activation state" of a television and "controlling activation of an audience measurement meter" accordingly.[8] In other words[:] collecting viewership data only when a television is turned on. And the first three columns of the specification explain that prior art audience measurement meters operated continuously, which resulted in unnecessary and wasteful power consumption, since the televisions they were monitoring were often inactive for large periods of time.[9] The specification also notes here that in some prior systems, an audience measurement meter's data would have to be discarded for an entire monitoring period if the meter lost power for any duration, even a short one.[10] In contrast to such prior art systems, the specification explains that the patent claims power

---

[6] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (internal quotation marks and citation omitted).

[7] *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766-67 (Fed. Cir. 2019).

[8] ('994 patent at 1)

[9] (*Id.*, cols. 1:12-3:2)

[10] (*Id.*, col. 3:19-33)

4

management methods that enable one to determine the activation state of a television and control activation of an audience measurement meter accordingly.[11] Nor is the patent as a whole directed to any one single way of doing this. Indeed, some claims (like claim 1) appear to be fairly agnostic as to how one determines whether the television is on.[12]

On the other hand, we also have to look to claim 7 itself in assessing step one. And claim 7 is not a claim that simply recites a method of collecting data when a television is turned on, full stop, while being agnostic as to how that is determined. Instead, claim 7 reflects *one particular way* to monitor whether the TV is on.

More specifically, it can be said that claim 7 is made up of four clauses, and the first three clauses are directed to describing this particular way. The first clause tells us that we[ are] going to measure power consumption of a television, and the next two clauses tell us that we[ are] going to determine whether the television is on utilizing the two-threshold element. Finally, the last clause of the claim tells us to control the audience measurement meter such that it is active when the television is on. So it[ is] really only the last clause of claim 7 that sounds a lot like Defendant's abstract idea. This reality might lead one to conclude the claim is not simply directed to that idea, but to a particular, real-world application of it.

Other issues seem to muddy the "directed to" inquiry even further. For example, the way that Plaintiff at times describes claim 7 in its briefing seems to mirror Defendant's abstract idea, such as when Plaintiff noted in its answering brief at page 4 that "[c]laim 7 provides for an audience measurement meter that is activated only when the power consumption of a media presentation device that it monitors indicates that the media presentation device is on."[13] That said, at other times, Plaintiff characterizes the claim in a way that makes it seem [like it is] more about the particular two-threshold element solution, such as on note 12 of page 13 of its answering brief, where Plaintiff describes the claim as one that "recites the control of the meter according to the on/off state of the

---

[11]   (*Id.*, col. 2:12-60)

[12]   (*Id.*, col. 21:31-53)

[13]   (D.I. 13 at 4)

5

television as determined by measuring power consumption using the two[-]threshold approach."[14]

Additionally, the specification does[ not] say much about the particular two-threshold method and why it, in particular, improves upon prior art systems. Indeed, it[ is] not until column 8, line 3, that the specification first references the two-threshold element as a possible way to determine whether the television is on.[15]

So in the end, the step one question is a bit murky. In *Enfish, LLC, v. Microsoft Corp.*, the Federal Circuit said that in some cases involving computer-related claims, there may be close calls about how to characterize what the claims are directed to, and that in those situations, a Court could analyze whether there are arguably concrete improvements in the recited computer technology at *Alice*'s step two.[16] In light of this, the Court will assume *arguendo* that claim 7 is directed to an abstract idea, and will analyze whether the claim amounts to an improvement to computer technology—or otherwise contains an inventive concept—at step two.

Step two of the *Alice* framework requires the Court to assess what else there is in the claim beyond the abstract idea in order to determine whether the additional elements transform the nature of the claim into a patent-eligible application of the idea.[17] While a determination of patent eligibility is ultimately an issue of law, there can be disputes regarding underlying facts, including whether a claimed element or claimed combination is well-understood, routine, and conventional to a skilled artisan at the time of the patent.[18]

In examining the claim at step two, the Court will focus on the two-threshold element rather than the activation control element, just as Plaintiff largely did in its briefing. That[ is] presumably because, as the Court explained above, the activation control element sounds a lot like Defendant's abstract idea. So it is the

---

[14]  (*Id.* at 13 n.12)

[15]  ('994 patent, col. 8:3-12)

[16]  822 F.3d at 1339.

[17]  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).

[18]  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69 (Fed. Cir. 2018).

two-threshold element that might best be described as something that goes beyond that idea and that could amount to the inventive concept here. The Court will now explain why, ultimately, it agrees with Plaintiff that there is a fact dispute as to whether claim 7 of the '994 patent supplies an inventive concept that would transform the idea of collecting viewership data only when a television is on into a patent-eligible application.

In its briefing, Defendant made a number of arguments as to why it should prevail at step two, but the Court does not believe that they[ are] well taken.

For example, [D]efendant argued that the two-threshold element fails to amount to an inventive concept because it "is just an automated way of doing the same thing a human could easily do by looking to see [if] the television is on."[19] To this, though, Plaintiff retorts that a human being could not mentally measure power consumption to determine the activation state of a television.[20] This seems correct to the Court. Plaintiff's complaint attaches the declaration of Virginia Lee (which the Court will refer to hereafter as the "Lee declaration").[21] Contrary to Defendant's assertion that this declaration is "conclusory,"[22] the Court found the declaration as a whole to be fact-based and relevant to the content of claim 7. Ms. Lee explains in paragraph 9 of the declaration that power consumption is measured in watts. Defendant fails to explain how the human mind could measure watts, or how it could determine at any given moment whether the television consumption exceeded a certain threshold, like 60 watts or 40 watts. It seems to the Court [that] you need some mechanical way to measure power consumption as required by the two-threshold element. Moreover, it seems clear that the claim and the invention [are] meant to be used to figure out whether a television is on over very lengthy and uninterrupted stretches of time. As a practical matter, no human being sits in front of a television for 24 hours a day or close to it [in order] to determine whether that [television] is on. You need a technical, computer-based solution for that, and that[ is] why the patent asserts [one] here.

---

[19] (D.I. 11 at 19)

[20] (D.I. 13 at 12)

[21] (D.I. 1, ex. B)

[22] (D.I. 15 at 9)

7

And while it is true that certain aspects of the specification, including column 16, lines 14 to 16, generally state that certain steps of the various claimed methods could be implemented manually,[23] these statements are not clearly focused specifically on the two-threshold element that[ is] required by claim 7. So [D]efendant's "human analogue" analogies do[ not] ring true.

Next, Defendant contended that the two-threshold element simply "reflect[s] the abstract idea itself and require[s] only conventional computer functionality."[24] As for the assertion that the two-threshold element simply reflects the abstract idea itself, the Court is not sure how that[ is] so. The two-threshold element is a *particular way of accomplishing* the idea of collecting viewership data only when a television is turned on (that is, by measuring power consumption and by determining whether the power is on or off utilizing a comparison of two thresholds).

And as for Defendant's assertion that the two-threshold element only requires conventional computer technology, as Plaintiff retorts, that[ is] not the test for patent eligibility. As the Federal Circuit explained in cases like Bascom Global Internet Services, Inc.[] v. AT&T Mobility LLC, even if a claim's limitations recite generic computer, network, and [I]nternet components, an inventive concept may still be found in how the components are utilized and how they[ are] arranged with other components.[25]

Defendant's complaint that the two-threshold element is not an advancement in computer technology seems to flow from its assertion that the claim recites no instructions, for example, about exactly *how* power consumption is measured or *how* either of the two thresholds are determined.[26] And it[ is] true, claim 7 does[ not] explain this. However, the claim clearly does recite at least one level of "how." It instructs one to compare the measured power consumption of the television to two different thresholds (where the television is considered to be on if the power is greater than the first threshold and the television is considered to be off if the power is less than the second threshold), and to control the

---

[23]    ('994 patent, col. 16:14-16)

[24]    (D.I. 15 at 10; *see also* D.I. 41 at 2)

[25]    *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-50 (Fed. Cir. 2016).

[26]    (D.I. 15 at 4)

audience measurement meter accordingly. From there, you can use any known method for determining when a threshold is hit, and the claim is silent as to which you use. But that[ is] a claim to a *specific, particularized way* to collect viewership data only when a television is turned on. And to the extent that Defendant's complaint is that the specification does[ not] say much about how the method gets done, as the Court noted earlier today, that might present a Section 112 issue, but not an eligibility issue under Section 101.[27]

Lastly, in its reply brief, Defendant further asserted that the two-threshold element is just a mathematical comparison, which itself is an abstract concept that does[ not] make the claim less abstract[.] [B]ut because the defendant did not raise this specific line of attack in its opening brief, Plaintiff did[ not] have a chance to fairly respond, and thus the Court considers this argument to be waived. Nevertheless, even were it not waived, it is not the case that the use of math in some way in a claim automatically renders the claim patent ineligible. In *Diamond v. Diehr*, for example, the Supreme Court found that a computer implemented process for curing rubber, which employed a well-known mathematical equation, was patent-eligible, because it used the equation in a process designed to solve a technological problem.[28]

In the end, for the reasons the Court has explained here, Defendant's arguments are not persuasive at step two. Moreover, the Court's decision here is also in line with Federal Circuit caselaw. In explaining why this is so, the Court will discuss briefly the cases [Defendant] highlights as analogous to claim 7, explain why they[ are] distinguishable, and also explain how they in fact help to show why Defendant's motion warrants denial.

Defendant identifies *ChargePoint, Inc., v. SemaConnect, Inc.*,[29] as the most similar case to claim 7 here.[30] In that case, the claims at issue could be said to be similar to claim 7 in the sense that they seem[ed] to comprise hardware components and software components that communicate to turn charging stations on and

---

[27] *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261 (Fed. Cir. 2017).

[28] *Diamond v. Diehr*, 450 U.S. 175, 185-87 (1981).

[29] *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019).

[30] (D.I. 11 at 11-12; D.I. 15 at 4-5; D.I. 41 at 1)

9

off.[31] However, the two-threshold approach is a distinguisher here, in that the claims in *ChargePoint* did not include a limitation that recited a *particular way* to accomplish this. Rather, the *ChargePoint* Court noted that the broad claim language in those claims would cover "any mechanism" for implementing network communication on a charging station, which would thus "preempt[] the entire industry's ability to use networked charging stations."[32] Further, in that case, the specification was[ not] helpful to the patentee as it "never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could" or that the invention involved overcoming some "sort of technical difficulty[.]"[33]

Claim 7, in contrast, would clearly not preempt any method of collecting viewership data only when a television is turned on, since it claims only one particular way of doing that. For instance, claim 7 does not preempt controlling the audience measurement meter according to the audio output of the television, which the Lee declaration recognizes in paragraph 16 (and which appears to be claimed, along with other things, in [c]laim 3 of the '994 patent[])[.][34] Nor would claim 7 preempt using a single threshold to determine the activation state of a television, as recognized in paragraph 23 of the complaint.[35] Indeed, even Defendant acknowledges at page four of its reply brief that the patent specification describes other ways to determine whether a television is on.[36]

Defendant analogizes the "two-threshold element" to the utilization demand response principles in certain claims that were at issue in *ChargePoint*. The *ChargePoint* Court said that the use of these demand response principles was ["]itself an abstract concept—a familiar business choice to alter terms of dealing to

---

[31] *ChargePoint, Inc.*, 920 F.3d at 764.

[32] *Id.* at 770.

[33] *Id.* at 768.

[34] (D.I. 1, ex. B at ¶ 16; '994 patent, cols. 21:64-22:6)

[35] (D.I. 1 at ¶ 23)

[36] (D.I. 15 at 4)

help match supply and demand.["]<sup>37</sup> The patent specifications at issue there described demand response as being in use in other consumer services, which led to the Court's conclusion that the combination of connecting generic networking equipment to a charging device to carry out a demand response plan already existed.  Here, as noted above, the specification does[ not] say a whole lot in regard to the two-threshold element, though as the Court will note in a moment, there is some evidence in the record here that helps fill in some of the blanks.  But nowhere in the record is there a statement that the two-threshold element has been utilized in this general field in a similar fashion.

In *ChargePoint*, the Court said that the claims failed to improve how charging stations function.[38]  Here, however, there[ is] a better record establishing at least a fact dispute as to whether the two-threshold method resulted in an improved technological method that overcame prior art problems with the operation of audience measurement meters.  While the specification does[ not] seem to reference the two-threshold element in great detail, the Lee declaration and paragraphs 22 through 25 of the complaint help to establish a factual dispute as to step two.[39]  In those paragraphs [of the Lee declaration], Ms. Lee explains how using two thresholds results in an effect known as hysteresis, which is an advantage over prior art methods in terms of measuring power consumption to determine whether a television is on.[40]  Ms. Lee details how this is so, in that a given television will have an average power consumption, but the actual power consumption at any given time will vary a certain amount, and such variations can be frequent and rapid.  She explained that, for example, if a television has an average power consumption of 40 watts in an on state, then if a single threshold (like 40 watts) were used to determine if the television was on, that that could lead to false determinations because, for example, sometimes the power consumption rate can go slightly lower than 40 watts but the [television] can still be on.  In contrast, she explains that using a hysteresis effect can help with this problem, in that the determined state of the television only changes if the variation in power consumption is significant enough to evidence a true change in the on/off state of the device.  For example, if thresholds of 40 watts and 10 watts are used, then

---

<sup>37</sup>   *ChargePoint, Inc.*, 920 F.3d at 771.

<sup>38</sup>   *Id.* at 774-75.

<sup>39</sup>   (D.I. 1, ex. B; D.I. 1 at ¶¶ 22-25)

<sup>40</sup>   (*Id.*, ex. B at ¶ 11)

11

the television will be deemed on if the power consumption is above 40 watts and deemed off if below [10] watts, and if the power consumption is in between those points, the state will be determined to remain the same as the last determined state.

*Chamberlain Gr[p.] Inc. v[.] Techtronic Indus[.] Co[.]*[41] is another case that Defendant highlights as having similar claims to claim 7 here,[42] but it is easily distinguishable. In *Chamberlain*, the Federal Circuit found that the representative claim was directed to the abstract idea of "wirelessly communicating status information about a system[,]" in significant part because the specification helped confirm that the only difference between the claimed movable barrier operator system and the prior art movable barrier operator systems was that in the claim, the status information about the system was communicated wirelessly[—]a concept that the patent acknowledged was conventional and well-understood.[43] Here, in contrast, as just explained, there is at least a fact dispute as to whether the two-threshold element provides an inventive concept.

Finally, in *WiTricity Corp. v[.] Momentum Dynamics Corp.*, another case, th[is] one from the District of Delaware, that [D]efendant highlights as being similar to claim 7,[44] the abstract idea at issue was "optimizing the efficiency or power level of a wireless power transfer while maintaining at least a minimal level of both."[45] The representative claims at issue seem[ed] to just rehash this abstract idea, without saying anything specific about how to do so. The *WiTricity* Court explained that the claims would thus preempt a substantial number of uses of a fundamental principle.[46] Here, though, claim 7 recites a *specific way* of accomplishing the idea of collecting viewership data when a television is on. It[ is] true [that] in *WiTricity* the representative

---

[41] *Chamberlain Grp. Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341 (Fed. Cir. 2019).

[42] (D.I. 11 at 12)

[43] 935 F.3d at 1346, 1348-49.

[44] (D.I. 15 at 5)

[45] *WiTricity Corp. v. Momentum Dynamics Corp.*, 563 F. Supp. 3d 309, 315 (D. Del. 2021).

[46] *Id.* at 322.

12

claim also used the word "threshold" just like claim 7 does.[47] The *WiTricity* claim states that a circuit would optimize transfer efficiency of power transmitted wirelessly to the receiver or optimize the amount of the power received wirelessly to the receiver [] if certain values were greater than or equal to certain thresholds. But although the patent in *WiTricity* was trying to accomplish the goal of optimizing the power level or efficiency of a wireless power transfer, the two thresholds mentioned in the claim were[ not] asserted to be *the way that you did that*. Here, in contrast, the two-threshold element is asserted to be the *claimed solution* for solving a technological problem at issue. In *WiTricity*, the Court also noted that the patent did not "set[] any threshold for transfer efficiency or amount of power that would achieve the optimization goal."[48] While claim 7 does[ not] set any particular thresholds either, the claim does at least require that the use of two thresholds be in place, and it utilizes a greater than/less than structure. Paragraph 11 of the Lee declaration explains, as I have set out previously, how the use of two thresholds is a[n] improved approach because it results in a hysteresis effect, which allows for an accurate determination of whether the television is on.[49]

For all [of] these reasons, the Court finds that claim 7 here is more similar to the claims that were at issue in *Bascom Global Internet Services, Inc., v[.] AT&T Mobility, LLC*.[50] In that case, for example, a representative claim at issue recited a system for filtering internet content that comprised, first, a local client computer that generated network access requests for individual network accounts; second, one or more filtering schemes; third, a plurality of sets of logical filtering elements; and, fourth, a remote ISP server that associated each network account to at least one filtering scheme and set of filtering elements.[51] While filtering content on the [I]nternet was a known concept at the time the patent issued, the patent in *Bascom* explained how the claimed particular arrangement of elements amounted to a technical

---

[47] *Id.* at 318-19.

[48] *Id.* at 319.

[49] (D.I. 1, ex. B at ¶ 11)

[50] *Bascom Global Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

[51] *Id.* at 1345.

13

improvement over prior art methods of filtering content.[52] The Federal Circuit concluded the patentee adequately alleged that the claims passed muster at step two of *Alice*, with the claims providing the inventive concept of the installation of a filtering tool at a specific location, remote from end users, with customizable filtering features specific to each end user. Accordingly, the *Bascom* Court held that the claims did not preempt all ways of filtering content on the internet, and instead recited "a specific, discrete implementation of the abstract idea of filtering content" that amounted to a technical improvement over prior art methods.[53] Here too, the complaint's allegations and the Lee declaration, taken together with the specification of the '994 patent and the content of claim 7, create a material factual dispute as to patent eligibility[.]

[A]nd so for all these reasons the Court, therefore, denies Defendant's motion.

---

[52]     *Id.* at 1350.

[53]     *Id.*